McCarthy, J.P.
Appeal from a judgment of the Supreme Court (McGrath, J.), entered July 3, 2013 in Albany County, which dismissed petitioners’ application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Governor’s Office of Employee Relations denying petitioner Thomas Tierney’s out-of-title work grievance.
Petitioner Thomas Tierney is employed by respondent Office of Mental Health (hereinafter OMH) as a Safety and Security Officer 2 (hereinafter SSO 2) — a salary grade 15 position — and, at all times relevant to this proceeding, was represented by petitioner New York State Correctional Officers and Police Benevolent Association, Inc. (hereinafter NYSCOPBA) — the certified collective bargaining representative for the Security Services Unit of state employees. In June 2011, the Chief Safety and Security Officer (hereinafter CSSO) assigned to Hudson River Psychiatric Center in Dutchess County — where Tierney then was working as an SSO 2 — transferred to another facility. As a result, Tierney was advised that he would be fulfilling the duties of the CSSO and would be serving as the “Acting Chief” at that facility.[1] According to Tierney, he thereafter performed the duties ordinarily assigned to the CSSO until the facility closed in January 2012.
In the interim, Tierney filed an out-of-title work grievance in August 2011 seeking additional compensation for the duties he performed in his capacity as the facility’s CSSO — a salary grade 20 position. As the step 1 review process customarily is conducted by the CSSO in question, this portion of the grievance process was bypassed in order to avoid having Tierney review his own grievance. OMH thereafter conducted the step 2 review of the grievance and, in December 2011, sustained Tierney’s grievance, finding that, “[a]fter a thorough review of the record, facts, documentation and discussion with facility management, it is [OMH’s] determination that the grieved duties are most appropriate to that of a [CSSO].” Ultimately, *1268 the grievance proceeded to step 3 review,[2] where respondent Division of Classification and Compensation of the Department of Civil Service (hereinafter DCC) recommended that respondent Governor’s Office of Employee Relations (hereinafter GOER) deny the grievance. GOER adopted that recommendation, and petitioners thereafter commenced this CPLR article 78 proceeding to annul GOER’s determination. Supreme Court dismissed petitioners’ application, prompting this appeal.
We affirm. Civil Service Law § 61 (2) provides, in relevant part, that “no person shall be assigned to perform the duties of any position unless he [or she] has been duly appointed, promoted, transferred or reinstated to such position in accordance with [the statute] and the rules prescribed thereunder.” “An out-of-title work assignment exists when an employee has been assigned or compelled to perform the duties of a higher grade, without a concomitant increase in pay, frequently, recurrently and for long periods of time” (Matter of New York State Corr. Officers & Police Benevolent Assn., Inc. v Governor’s Off. of Empl. Relations, 105 AD3d 1192, 1193 [2013] [internal quotation marks and citations omitted]; see Matter of City of Saratoga Springs v City of Saratoga Springs Civ. Serv. Commn., 90 AD3d 1398, 1400 [2011]). An employee is not necessarily performing out-of-title work by fulfilling some overlapping functions of an absent supervisor, if those functions are substantially similar to duties listed in the classification standard for the employee’s title (see Matter of New York State Corr. Officers & Police Benevolent Assn., Inc. v Governor’s Off. of Empl. Relations, 105 AD3d at 1194; Matter of City of Saratoga Springs v City of Saratoga Springs Civ. Serv. Commn., 90 AD3d at 1400; see also Matter of Woodward v Governor’s Off. of Empl. Relations, 279 AD2d 725, 726 [2001]). In determining if the prohibition against out-of-title work has been violated, courts look “at the similarities between the duties assigned and those customarily performed by the employee, the extent to which the employee exercised the full range of duties of the higher level position, and whether the duties actually performed could be characterized as a reasonable extension of the employee’s in-title duties” (Matter of Cushing v Governor’s Off. of Empl. Relations, 58 AD3d 1095, 1096 [2009]; see Matter of New York State Corr. Officers & Police Be *1269 nevolent Assn., Inc. v Governor’s Off. of Empl. Relations, 105 AD3d at 1194; Matter of Brynien v Governor’s Off. of Empl. Relations, 79 AD3d 1435, 1436 [2010]; Matter of Haubert v Governor’s Off. of Empl. Relations, 284 AD2d 879, 880 [2001]).
Preliminarily, consistent with the well-settled principle that “ I] Judicial review of an administrative determination is limited to the facts and record established before the agency” (Matter of Laughlin v Pierce, 121 AD3d 1249, 1251 [2014]), we have confined our review of the list of tasks performed by Tierney to those set forth in his grievance form and have not considered the expanded list of duties recited in the underlying petition and Tierney’s affidavit in support thereof. Although our review of the subject grievance most likely would have been enhanced had either Tierney or NYSCOPBA articulated Tierney’s out-of-title work claim with a greater degree of specificity, we must decide this matter based on the record that was before GOER and DCC. Our review is limited to whether that record provides a rational basis for GOER’s determination, and whether the determination is arbitrary or capricious (see Matter of New York State Corr. Officers & Police Benevolent Assn., Inc. v Governor’s Off. of Empl. Relations, 105 AD3d at 1193; Matter of Cushing v Governor’s Off. of Empl. Relations, 58 AD3d at 1097).
Tierney was employed as an SSO 2 and alleged that he was performing the work of a CSSO. On his grievance form, Tierney listed the specific tasks that he performed that he believed constituted out-of-title work, including supervisory responsibilities. The entirety of that list was “[ojverseeing day to day operations, attending committee and sub-committee meetings, compile EOCC reports, overseeing vendors (Simplex & ADT), generating reports, TIMR conference calls, monitor and track overtime and adjust [d]uty [s]chedule to minimize usage[,] . . . direct supervision of all [d]ay [s]hift [o]fficers[,] . . . schedule assignments and ensure completeness.” He then listed, apparently as the employees that he supervised, two Safety and Security Officers 1 (hereinafter SSO 1) and one SSO 1 trainee.
The classification standard for an SSO 2 states that employees in that title are the “first supervisory level,” responsible for a group of SSO Is “on an assigned shift in a facility.” SSO 2s are responsible for “[d]irect supervision of all [SSO Is],” including scheduling and assigning them, providing instruction and training, maintaining time and attendance records, reviewing reports by subordinates, preparing reports and performance appraisals and assisting the CSSO. SSO 2s are also required to attend certain committee meetings, review facility plans and prepare written reports. The classification standard notes that *1270 SSO 2s “[m]ay be assigned to direct the department in the absence of the [CSSO].”
The classification standard for a CSSO states that employees in that title are responsible for the overall operation of a safety and security department, including “supervision of all safety and security personnel,” maintaining equipment and records, and developing and evaluating all policies and procedures. Some of the illustrative duties include supervising and directing all personnel, reviewing and approving schedules and assignments made by SSO 2s, ensuring maximum coverage with available personnel, preparing annual performance reviews for SSO 2s, developing protocols and education programs, reviewing reports of subordinates, preparing monthly and annual reports, representing the department on committees, being responsible for the budget, materials and the contracts for certain safety systems, and developing, monitoring and evaluating all policies and procedures. When comparing related classes, the CSSO classification standard notes that SSO 2s are working supervisors responsible for a force of less than 10 SSO Is or serve as shift supervisors.
In considering the grievance, GOER and DCC compared the grieved duties that Tierney listed on his grievance form with the two classification standards. Some of the listed duties are appropriate for either title, as both are supervisory positions. These include attending committee meetings, preparing reports and supervising subordinates. Scheduling of assignments is the responsibility of an SSO 2, with a CSSO responsible for reviewing and approving such work. An SSO 2 is generally the supervisor on a specific shift, whereas a CSSO is the supervisor for all safety and security personnel in the department, which would include all shifts. Tierney’s grievance form stated that he was responsible for supervising officers on the day shift, and listed the names of three subordinate officers. These duties fall within the typical responsibility of an SSO 2. Tierney did not assert in his grievance form that he was performing all, or even the most distinctive aspects, of the duties of a CSSO. Based on the limited duties listed on Tierney’s grievance form, DCC and GOER rationally found that the work he was performing, in the absence of his supervisor, either fell within the duties of an SSO 2 or were a reasonable and logical outgrowth of those duties (see Matter of New York State Corr. Officers & Police Benevolent Assn., Inc. v Governor’s Off. of Empl. Relations, 105 AD3d at 1196-1197; Matter of Cushing v Governor’s Off. of Empl. Relations, 58 AD3d at 1097).
The dissent is persuaded by and relies upon the step 2 deter *1271 mination by OMH finding that Tierney’s grievance should be granted. OMH did not dispute that Tierney was performing the duties that he asserted. OMH then stated, in a conclusory fashion, that it found the grieved duties most appropriate to the CSSO title, after reviewing the record, facts and documents and a discussion with facility staff. DCC and GOER also did not dispute that Tierney performed the grieved duties, but reached a different legal conclusion. It is unclear if OMH performed the comparison of the grieved duties to the two classification standards, as DCC did. Rather than deferring to OMH, as the dissent does, we should defer to DCC and GOER, the agencies or offices that are responsible for regularly making this type of determination (see Civil Service Law § 118 [2]; Executive Law §§ 653, 654) and that are not bound by OMH’s decision.
Petitioners also contend that DCC and GOER acted arbitrarily and irrationally by deciding this grievance differently than that of another SSO 2 who was assigned as an Acting CSSO for a different facility. The other SSO 2 asserted on her grievance form that she performed many more of the CSSO duties and stated that she, among other things, supervised all 28 employees of her safety department across all three shifts. Considering this enhanced information, the record substantiates respondents’ assertions that the facts presented by those two individuals were different, rationally leading to different outcomes. Inasmuch as GOER’s determination here was rationally based on the evidence presented to it, and was not arbitrary or capricious, we will not disturb that determination.
Rose and Clark, JJ., concur.

. According to information contained in the record, this unofficial job title is not formally recognized by the Department of Civil Service.

. Tierney apparently was required to appeal through step 3 in order to obtain remuneration for the out-of-title work performed and, to that end, OMH referred the grievance to respondent Division of Classification and Compensation of the Department of Civil Service to take appropriate action. NYSCOPBA, noting that such referral was not in accordance with proper procedure, thereafter filed a formal appeal upon Tierney’s behalf.